# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

| | | |
|---|---|---|
| ROW EQUIPMENT SALES & RENTAL, INC., | * * * | |
| Plaintiff, | * * | |
| vs. | * * | CV 511-099 |
| GRANGE MUTUAL CASUALTY COMPANY d/b/a GRANGE INSURANCE, | * * * * | |
| Defendant. | * | |

## ORDER

Presently before the Court is a Motion for Summary Judgment filed by Defendant Grange Mutual Casualty Company d/b/a Grange Insurance ("Grange" or "Defendant"). Dkt. No. 17. For the reasons stated below, Defendant's motion is **DENIED**.

## BACKGROUND

Most of the facts in this case are not in dispute. Plaintiff Row Equipment Sales & Rental, Inc. ("Row") is in the business of selling and renting forestry and construction equipment. Dkt. No. 17, Ex. 1 14:24-25. Consistent with industry practice, Row allows a potential purchaser to take a piece of equipment on a trial basis and use it at a worksite to

1

determine whether he or she would like to buy the equipment. Dkt. No. 17, Ex. 1 30:14-19. This is known as a "demo." Dkt. No. 17, Ex. 1 28:16-20. If, after the "demo," the company purchases the equipment, Row does not charge for the use during the "demo" period. Dkt. No. 17, Ex. 1 32:23-25, 33:1-6. However, if no purchase is finalized, Row may, depending on the circumstances, charge the company for the use of the equipment. Dkt. No. 17, Ex. 1 31:1-6, 32:23-25.

A Texas-based company, Johnson Construction Company ("JCC"), contacted Row and expressed an interest in purchasing a machine used to cut down trees. Dkt. No. 17, Ex. 1 57:17, 66:3-6. Row had in its inventory a piece of equipment called a TimberKing 711B ("TimberKing"), which met JCC's needs. Around February 15, 2011, Row transported the TimberKing to one of JCC's job sites in Louisiana for a "demo." Dkt. No. 17, Ex. 1 58:21-25. On March 14, 2011, the TimberKing, while still located in Louisiana, caught fire and burned. Dkt. No. 17, Ex. 1 59:2-12. At the time of the fire, JCC and Row had discussed a potential sale, but nothing had been finalized. John Allen James, ("James"), the sole owner and president of Row, testified that the fire occurred before the parties "could get the deal done" and that they had not yet "gotten together on a final

2

AO 72A
(Rev. 8/82)

price." Dkt. No. 17, Ex. 1 66:16-19. JCC never paid Row for the TimberKing or for its use. Dkt. No. 17, Ex. 1 67:8-21.

There is a factual dispute about who had possession of the TimberKing when it burned. Defendant Grange Mutual Casualty Company d/b/a Grange Insurance ("Grange") contends that JCC had possession when the fire began. Dkt. No. 21. Conversely, Row contends that its own employee had possession of the TimberKing when it ignited. Dkt. No. 24.

Following the fire, Row submitted a demand for payment under its insurance policy for the loss of the TimberKing. Row is insured under a commercial insurance policy issued by Grange. Policy, Dkt. No. 1, Ex. 2. The policy incorporates specialized provisions titled the "Mobile Equipment Dealers Coverage." Under the Mobile Equipment Dealers Coverage form, coverage is excluded for pieces of "mobile equipment" that are "leased, rented, or loaned to others." Grange denied Row's demand based on that exclusion, asserting that the TimberKing was leased, rented, or loaned to JCC at the time of the fire. Row then filed suit in the State Court of Pierce County, Georgia asserting two causes of action: bad faith failure to pay a claim and breach of contract. Dkt. No. 1. As relief, Row sought (1) the value of the loss of the TimberKing, (2) an additional fifty percent of the value of the TimberKing as a statutory penalty

3

for Grange's bad-faith refusal to make payment on Row's claim within sixty days, and (3) Row's attorney's fees under O.C.G.A. § 33-4-6. Dkt. No. 1. Grange removed the lawsuit to this Court and now seeks summary judgment on Row's claims. Dkt. No. 1.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(c), "[s]ummary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990). The court must view the evidence and draw all inferences in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). To discharge this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show

4

that a genuine issue of fact does exist.  <u>Anderson v. Liberty</u>

<u>Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

**DISCUSSION**

The commercial insurance policy at issue in this case

covers losses to mobile equipment held by the insured, Row, that

are for sale or rent in the ordinary course of Row's business.

The policy, however, expressly excludes covered equipment which

is leased, rented, or loaned to someone other than the insured

when the loss occurs.  Specifically, paragraph five of the

Mobile Equipment Dealers Coverage form states:

> 5. Property Leased, Rented, Or Loaned –
>    "We" do not cover property that is leased, rented,
>    or loaned to others.

Dkt. No. 1, Ex. 2.

Grange seeks summary judgment, arguing that the TimberKing

was loaned or rented to JCC when the loss occurred.  The policy

does not define the terms "rented" or "loaned."  Grange,

however, claims that the evidence supports only one conclusion—

that Row rented or loaned the TimberKing to JCC.  As such,

Grange argues the loss is specifically excluded and summary

judgment is proper.

Summary judgment is inappropriate in this case for two

reasons.  First, there remains a disputed issue of material fact

as to who had possession of the TimberKing at the time the loss

occurred.  Possession is required for either a rental or a loan.

5

If JCC did not have possession, there could not have been any rental or loan to JCC. Secondly, issues of fact remain as to the intent of Row and JCC. Because the purpose of sending the TimberKing to Louisiana was to consummate a sale, a jury could find that Row and JCC did not intend for the arrangement to be either a "rental" or a "loan" as those terms are defined in their ordinary and common usage.

## I. Dispute as to possession of the TimberKing

The first reason for denying summary judgment is that the definitions of both "rent" and "loan" require a transfer of possession. There is a factual dispute as to who had possession of the TimberKing when it caught fire. Row has submitted two affidavits stating that one of Row's employees, Devon Milligan, was operating the TimberKing when the fire began. Dkt. No. 26, Ex. 1, ¶ 8; Ex. 2, ¶ 9. One of these affidavits is from James, the owner and president of Row, and the other is from Michael O. Johnson ("Johnson"), the owner and president of JCC. In both of these affidavits, the affiants state that "[w]hen the TimberKing caught fire it was being operated by and was under the sole and exclusive possession of R[ow]'s employee, Devon Milligan." Dkt. No. 26, Ex. 1, ¶ 8; Ex. 2, ¶ 9.

6

Grange argues that James's affidavit should be disregarded because it is inconsistent with his earlier oral examination[1] testimony. Grange contends that James stated in his oral examination that JCC had "custody and control" of the TimberKing. See Dkt. No. 24. Grange urges that James's later affidavit suggesting otherwise is a sham.

As an initial matter, even if James's affidavit were a sham, there would still be a material issue of disputed fact as to possession. James's affidavit is not the only source of the dispute. In his own affidavit, Johnson stated that Row's employee was operating the TimberKing when it caught fire. Dkt. No. 26, Ex. 2, ¶ 9. Johnson's affidavit cannot be disregarded as a sham because, unlike James, Johnson never gave any prior testimony. Therefore, it would be impossible for Johnson's affidavit to be an attempt to change prior testimony.

Additionally, the sham testimony rule does not apply to James's affidavit either. "An affidavit may only be disregarded as a sham 'when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact." Tippens v. Celotex Corp., 805 F.2d 949, 954 (11th Cir. 1986) (citing Van T. Junkins & Assocs., Inc. v. U.S.

---

[1] The oral examination resembles a deposition in that James testified under oath, and the examination was recorded by a court reporter. However, James was not represented by counsel during the examination.

7

Indus., Inc., 736 F.2d 658, 657 (11th Cir. 1984). Close inspection of James's statements in his oral examination reveals that the present case does not fit within that standard.

Grange points to three specific places in James's oral examination that it claims contradict James's later statements in his affidavit. Dkt. No. 24. These three statements all involve James's answers to questions posed by Grange's lawyer, who conducted the oral examination. The first statement cited by Grange is the following: Grange's lawyer asked James if "[a]t any time before [JCC] took custody and possession of this 2004 TimberKing 711B, did [Row] ever try to sell it, this piece of equipment?" Dkt. No. 17, Ex. 1 39:1-4. In response, James stated that he had tried to sell it before and then proceeded to detail conversations he had with other potential purchasers. Dkt. No. 17, Ex. 1 39:5-15. In the second statement, Grange's lawyer asked whether "at the time this equipment caught fire over there[, did Row have] other pieces of equipment in the custody and control of [JCC]," to which James responded, "Yes, sir." Dkt. No. 17, Ex. 1 68:5-9. In the final statement at issue, Grange's lawyer said, "My understanding is [JCC] is the company that was using this TimberKing 711B when it caught fire; is that right?" Dkt. No. 17, Ex. 1 56:8-10. To which, James replied "[t]hat's right." Dkt. No. 17, Ex. 1 56:11.

8

AO 72A
(Rev. 8/82)

Looking at the statements in context, James's testimony at the oral examination is not incompatible with Milligan's operation of the TimberKing. The Eleventh Circuit has cautioned that the sham affidavit rule should be "applied sparingly." Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1237 (11th Cir. 2010) (citing Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1316 (11th Cir. 2007)). Nothing James said in his oral examination is "so directly contrary to" his later affidavit "that a determination as a matter of law may be made." Strickland v. Norfolk S. Ry. Co., No. 11-15589, 2012 WL 3640797 (11th Cir. Aug. 27, 2012). Contrary to Defendant's contention, James never used the words "custody and control." Rather, those words came from Grange's lawyer. Also, James was never asked directly whether Row was monitoring or supervising JCC's use of the TimberKing. Nor was he ever asked in his oral examination who was operating the TimberKing at the time of the fire.

In the first two statements cited by Grange, James was merely answering questions posed by Grange's lawyer that contained the terms "custody and control." The thrust of those questions, however, clearly concerned topics other than the "custody and control" of the TimberKing. When James answered those questions, he may have been addressing the main point of the question, rather than the prefatory language.

9

The third statement concerning JCC "using" the TimberKing is a closer case. However, even the third statement can be compatible with James's later affidavit. The purpose of the question asked by Grange's agent was to identify JCC as the other company involved in the loss of the TimberKing. The purpose was not to characterize JCC's involvement. As a result, none of James's statements are directly contrary to his later affidavit. The sham affidavit rule, therefore, does not apply to this case.

At most, James's failure to mention that his own employee was operating the TimberKing when it caught fire affects his credibility. "[Q]uestions of credibility . . . require jury resolution." Lane v. Celotex Corp., 782 F.2d 1526, 1530 (11th Cir. 1986) (quoting Kennett-Murray Corp. v. Bone, 622 F.2d 887, 895 (5th Cir. 1980)). Thus, summary judgment is not appropriate.

**II. Dispute as to the intent of JCC and Row**

A second and independent reason summary judgment is inappropriate is that issues of fact remain as to whether JCC and Row intended a rental or a loan. The policy does not define either "rented" or "loaned." Grange argues, and Row does not contest, that the terms "rented" and "loaned" are unambiguous. Dkt. No. 17. Under Georgia law, "[u]nambiguous terms" in an

10

insurance policy "are taken in their plain, ordinary and popular sense as supplied by dictionaries." Michna v. Blue Cross & Blue Shield of Ga., Inc., 653 S.E.2d 377, 380 (Ga. Ct. App. 2007); see also Henderson v. Henderson, 264 S.E.2d 299, 301 (Ga. Ct. App. 1979) ("Dictionaries supply the plain, ordinary and popular sense."). Thus, the dictionary definitions of "rented" and "loaned" must be examined.

When used as a verb, as it is in the exclusion, the word "rent" means "to take and hold under an agreement to pay rent," Webster's Third New International Dictionary 1923 (1986), with the noun "rent" in that definition meaning "the amount paid by a hirer or lessee of personal property (as farming stock, machinery) to the owner for the use thereof." Id.; see also Empire Fire & Marine Ins. Co. v. Daniels, 631 S.E.2d 799, 801 (Ga. Ct. App. 2006) (defining the verb "rent" as "to grant the possession and enjoyment of in exchange for rent; to take and hold under an agreement to pay rent"). Therefore, an owner "rents" his property to another if he voluntarily grants possession and use of the property to a person in exchange for that person's payment of a fee for the privilege of such possession and use.

Based on that definition, this Court cannot conclude as a matter of law that JCC was renting the TimberKing. The hallmark

11

of a rental relationship is the payment of a rental fee for possession and use. A jury must determine whether Row and JCC had the requisite intent that a rental fee be charged. A reasonable jury, by looking at the evidence, could find that Row and JCC did not have that intent. It is undisputed that, if all had gone as planned and JCC had purchased the TimberKing, JCC would not have paid any rental fee. Only if JCC had decided not to purchase the TimberKing would Row have considered requesting rent payments. Furthermore, despite the fact that JCC never finalized a purchase of the TimberKing, Row received no payment from JCC for its use of the TimberKing. As a result, the record contains sufficient evidence to support a jury finding that Row and JCC did not intend a rental relationship.

A jury determination as to whether Row and JCC had the requisite intent for a "loan" is also necessary. When used as a verb, as it is in the exclusion, the word "loan" means "to lend," Webster's Third New International Dictionary 1326 (1986), with the word "lend" meaning "to give into another's keeping for temporary use on condition that the borrower return the same or its equivalent." Id. at 1293. The verb "loan" (at least as applied to property other than money) does not connote the payment of a fee for using the loaned property. Instead, once he or she is finished using the loaned property, the borrower

12

will simply return to the lender either the thing itself or "its equivalent." Id.

The key feature of a "loan," therefore, is the granting of possession with the condition that the object itself, or its equivalent, be returned. A reasonable jury could conclude that, because JCC was "demoing" the TimberKing to determine whether to purchase it, Row did not condition sending the TimberKing to JCC's worksite on the equipment's eventual return. If JCC had purchased the TimberKing, the TimberKing would have remained in Louisiana.

Grange urges that there are only two possibilities: either Row rented or loaned the TimberKing to JCC and, under either interpretation, the loss would be excluded. However, a jury could find that an alternative arrangement was intended. JCC's "demo" of the TimberKing might be neither a rental nor a loan, but merely one step in a sales process. If so, the loss would not fall into the exclusion and would be covered by Grange's policy.

## CONCLUSION

Genuine issues of material fact exist as to whether Row rented or loaned the TimberKing to JCC. Where genuine issues of material facts exist, summary judgment is not proper. For these

13

reasons, Defendant's Motion for Summary Judgment, Dkt. No. 17, is **DENIED**.

        **SO ORDERED**, this 20th day of September, 2012.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)